

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-2007

# Comet v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2934

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Comet v. Atty Gen USA" (2007). *2007 Decisions*. Paper 1598.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1598

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-2934

ANNE NAYNA COMET,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES

Respondent

On Petition for Review of Final Decision of the
Board of Immigration Appeals
BIA No.: A95-369-451
Immigration Judge: Annie S. Garcy

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 15, 2007

Before: SMITH and FISHER, *Circuit Judges*,
and DOWD, *District Judge**

(Filed: February 20, 2007)

OPINION

---

*The Honorable David D. Dowd, Jr., Senior District Judge for the Northern
District of Ohio, sitting by designation.

SMITH, *Circuit Judge*.

Anne Nanya Comet petitions for review of a final order of the Board of Immigration Appeals ("BIA"), affirming the denial by the Immigration Judge ("IJ") of Comet's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[1] We will deny Comet's petition for review.

Anne Nanya Comet is a native and citizen of Kenya. Comet filed an application for asylum in the United States on December 28, 2001. Comet claimed that her life was in danger because she had supported a candidate, Tony Ndilinge, who had opposed the policies of the then ruling Kenya African National Union ("KANU") party's president, Daniel Arap Moi. Comet claims that she was arrested in 1994 because she supported Ndilinge by "organiz[ing] a civic, educational meeting." She was held for six hours and told to cease her political activities. Comet was arrested again in 1996, after Ndilinge's election to Parliament, held in custody for two days, and charged with illegal assembly. Ndilinge warned his supporters in early 2001 that they might suffer "dire consequences as a result of supporting an opposition candidate." Comet left Kenya in August of 2001. Ndilinge was assassinated by unknown assailants a month later.

The ruling party in Kenya changed for the first time in 2002. Mwai Kibaki of the

---

[1]The IJ had jurisdiction pursuant to 8 C.F.R. § 1208.2(b). The BIA exercised jurisdiction under 8 C.F.R. § 1003.1(b). We have jurisdiction to review the final order of the BIA under 8 U.S.C. § 1252. When the BIA affirms an IJ's decision without opinion, we review the IJ's decision as the final agency determination. *Berishaj v. Ashcroft*, 378 F.3d 314, 322 (3d Cir. 2004).

opposition party, the National Rainbow Coalition, was elected president. The KANU

party lost its majority in parliament, but retained 67 seats, compared to the National

Rainbow Coalition's 133 seats.

The IJ denied Comet's claims for asylum, withholding of removal, and relief under

CAT on May 23, 2003. The BIA summarily affirmed the IJ's decision. The IJ's oral

decision is unclear. The IJ found that the 1994 arrest did not constitute past persecution.

The IJ stated that, as to the 1996 arrest:

> The Court can easily find that because the police arrested the respondent
> [Comet] only because of her politics and held her for two days that even
> though she was not beaten the deprivation of liberty for a lengthy period of
> time could constitute past persecution and the Court can easily find this and
> does. The problem is the many, many changes in circumstance.

The IJ then proceeded as if she had not made a finding of past persecution or that such a

finding had been rebutted by the Government. The IJ stated that "there is just insufficient

evidence" to establish a "well-founded fear of persecution in Kenya upon return." The IJ

further remarked that:

> In other words, it's an obligation of the respondent to convince the Court
> that the change in government is not an important factor in her case. Thus,
> for a number of reasons, the [Court] finds that the respondent has not
> convinced the Court that she has a reasonable or well-founded fear of
> persecution in Kenya on account of her having been arrested in 1996 or, for
> that matter, on account of Ndilinge's assassination in August 2001.
> Therefore, with regard to that aspect of the claim, the respondent's [sic] has
> the inability to convince the Court that her fear is reasonable or well
> founded.

To the extent that we can read the tea leaves spread before us by the IJ, we conclude that

3

the IJ made a finding of past persecution arising from the 1996 arrest, but then found that the resulting presumption of a well-founded fear of future persecution was rebutted. Therefore, the burden of showing a well-founded fear of future persecution shifted back to Comet.

An applicant who establishes past persecution is "entitled to a presumption that his life or freedom will be threatened if he returns." *Gabuniya v. Attorney General of the United States*, 463 F.3d 316, 321 (3d Cir. 2006); *see* 8 C.F.R. § 208.16(b)(1). The Government may rebut this presumption by demonstrating by a preponderance of the evidence that "[t]here has been a fundamental change in circumstances such that the applicant's life or freedom would not be threatened . . . upon the applicant's removal." 8 C.F.R. § 208.16(b)(1)(i)(A), (b)(1)(ii). We review the IJ's denial of relief to determine if the conclusion is supported by substantial evidence. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

The IJ referred to three factors supporting a rebuttal of Comet's presumption of a well-founded fear of future persecution. The IJ cited the change in government as the principal fact undermining Comet's claim. The IJ also referred to the five years that elapsed without incident between Comet's 1996 arrest and her departure from Kenya. The IJ also noted that Comet could return to areas of Kenya, such as Nairobi, where her political activities were not well known.

We are troubled by the IJ's reliance on changed circumstances, specifically the

4

political reversals suffered by the KANU party. The IJ simply stated that because KANU "is now considered to be the minority party and the opposition party, obviously, there is little explanation for how it might be that the respondent might feel that the government would want to harm the respondent [Comet] at the present time." The IJ apparently ignored Comet's argument that many KANU politicians remained in power, both at the national and local level. We have previously chastised an IJ who "[b]ased solely on th[e] fact [that the government had changed], and without any evidence in the record of changed conditions regarding the practice of arbitrary arrest, torture, or corruption, or any evidence that conditions had changed for those advocating democratic reform," held that a presumption of a well-founded fear of future persecution was rebutted. *See Gabuniya*, 463 F.3d at 324. While the circumstances in *Gabuniya* were significantly more extreme, we nevertheless require that a finding of changed circumstances be supported by evidence in the record, not merely an inference made by the IJ based on a change in governing party. The IJ and the Government should look to independent evidence in the record when testing a presumption of well-founded fear of future persecution. Had the IJ looked to the State Department's 2002 Country Report on Kenya (which was entered as an exhibit), the IJ would have found evidence indicating that the change in ruling party has not had the transformative effect one might have hoped.[2] The Report, issued three

---

[2]State Department Country Reports remain an important resource for assessing country conditions. *See, e.g.*, *Lal v. INS*, 255 F.3d 998, 1023 (9th Cir. 2001) ("Our case law well establishes that the country report from our Department of State is the most

5

months after KANU lost power, indicates that:

> The Government's human rights record remained poor, and it continued to commit numerous, serious abuses. Citizens' ability to change their government peacefully was demonstrated with the inauguration of a new president following the December general elections. Security forces, particularly the police, continued to commit extrajudicial killings, torture and beat detainees, use excessive force, rape, and otherwise abuse persons. Prison conditions remained life threatening. Police harassed and arbitrarily arrested and detained persons, including journalists, politicians, and political activists. The Government arrested and prosecuted a number of police officers for abuses; however, most police who committed abuses were neither investigated nor punished.

Conditions may well have improved in the years since the National Rainbow Coalition took power. It may be true that, as Comet supported the government now in power, that neither the ruling party nor the remaining KANU politicians would target her. However, speculation without support in the record is insufficient to overturn a presumption of well-founded fear of future persecution arising from past persecution. The State Department Country Report contains none of the probative statements that we have found persuasive in other cases. *See, e.g.*, *Kayembe v. Ashcroft*, 334 F.3d 231, 235 (3d Cir. 2003) (citing a State Department Country Report stating that "the government of the Congo is no longer engaged in the practice of arresting and detaining members of the Tutsi ethnic group without charge."). We would grant Comet's petition for review if the change in ruling party were the only basis for the IJ's decision.

---

appropriate and perhaps best resource, for determining country conditions." (internal quotation marks omitted)).

6

However, we review the IJ's findings under the deferential substantial evidence standard. *Elias-Zacarias*, 502 U.S. at 481. Comet lived peacefully in Kenya for five years after her 1996 arrest and, according to the testimony of a witness called by Comet, could return to areas of Kenya where she would not be the target of localized KANU "vendettas." *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir. 2003) ("That presumption can be rebutted if the INS establishes by a preponderance of the evidence that the applicant could reasonably avoid persecution by relocating to another part of his or her country . . . ."). These facts constrain us to conclude that the IJ's finding that the Government rebutted Comet's presumption of a well-founded fear of future persecution was supported by substantial evidence.

The IJ held that Comet did not show an objectively reasonable basis for fear of persecution so as to establish grounds for asylum. Therefore, Comet has also not met the higher burden of establishing the clear probability of persecution required for withholding of removal. *See Gabuniya*, 463 F.3d at 320-21.

Comet must show that she is "more likely than not" to be tortured if she returns to Kenya to demonstrate entitlement to relief under the CAT. 8 C.F.R. § 1208.16(c)(2). Comet was never tortured and no evidence in the record compels the conclusion that she would be upon return to Kenya.

We will deny the petition for review.